UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOSEPH G. KRIBBLE, JR., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:21-cv-00072-AGF |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

This action is before the Court for judicial review of the final decision of the Commissioner of Social Security finding that Plaintiff Joseph G. Kribble, Jr. was not disabled, and thus not entitled to supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f.  For the reasons stated below, the decision will be affirmed.

**BACKGROUND**

The Court adopts the statement of facts set forth in Plaintiff's Statement of Uncontroverted Material Facts (Doc. No. 15), as supplemented by Defendant (Doc. No. 20-1).  Together, these statements provide a fair description of the record before the Court.  Specific facts will be discussed as needed to address the parties' arguments.

Plaintiff, who was born on April 7, 1976, protectively filed an application for SSI

1

on December 18, 2018.[1]  (Doc. No. 1).  In his application, Plaintiff stated that his Traumatic Brain Injury ("TBI"), major depressive disorder, bipolar disorder, generalized anxiety disorder, double vision, migraine headaches, and hypertension rendered him disabled and unable to work.  (Doc. No. 14).  The Administrative Law Judge ("ALJ") held a hearing on March 9, 2021.  (Tr. 33).  Attorney Courtney Hilts represented Plaintiff during the hearing, and both Plaintiff and Vocational Expert ("VE") Susan Shea testified. (Tr. 35).

By a decision dated May 14, 2021, the ALJ found that Plaintiff had the severe impairments of major depressive disorder, bipolar disorder, generalized anxiety disorder, migraine headaches, and hypertension.  (Tr. 15).  She also found that Plaintiff had non-severe impairments of an unspecified left knee condition, seborrheic dermatitis, hypothyroidism, obesity, diabetes mellitus, seizure disorder, right ankle tendonitis, oppositional defiant disorder, TBI, remote left arm open reduction, and gastroesophageal reflux disorder.  *Id*.  The ALJ found that none of Plaintiff's impairments or combination of impairments met or medically equaled one of the deemed-disabling impairments listed

---

[1]  This is the first date on which Plaintiff was eligible, following a prior unfavorable decision.  On December 18, 2018, Plaintiff filed another application for supplemental security income, alleging disability beginning December 17, 2018.  This resulted in an unfavorable decision by ALJ Lori Imsland, dated December 26, 2019.  (Tr. 177-188). The Appeals Council granted a request for review, and remanded the case on November 16, 2020, directing the ALJ on remand to further evaluate Plaintiff's mental impairments; further consider the residual functional capacity; and give consider to the medical source opinion of David Goldman, D.O., dated October 17, 2019, that was submitted prior to the hearing decision date.  (Tr. 194-196).  The ALJ in the current decision incorporated the summary of the prior hearing testimony and medical evidence of record from the decision that was remanded, except to the extent that analysis may be invalid, incomplete, or inconsistent with the analysis in the ALJ's current decision.  (Tr. 19).

in the Commissioner's regulations.  In reaching these findings, the ALJ determined that the prior administrative medical finding of state agency physician D. McCall, D.O., who determined that Plaintiff did not have any severe physical impairment, was not fully persuasive, instead finding that Plaintiff's severe hypertension and non-severe physical conditions were more limiting than the medical consultant concluded.  (Tr. 22).  The ALJ found the prior administrative medical finding of the non-examining state agency medical psychologist, S. Akeson, Psy.D., who found no more than moderate mental limitations in certain areas, to be supported by the mental status examination findings and the evidence as a whole.  (Tr. 23).

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, with the following non-exertional limitations:

> He cannot climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs.  He can engage in occasional kneeling, crouching, and crawling.  He cannot work at unprotected heights, around moving mechanical parts or other such hazards and must work in an environment with a noise level of no more than 3-moderate. The claimant cannot work in an environment where flashing or strobe lights would be encountered more than occasionally and where the lighting is no brighter than would normally be found in a typical office or warehouse setting.  He can maintain the concentration required to perform simple routine tasks, remember work procedures, and make simple work-related decisions.  The claimant cannot work at a fast pace such as an assembly line, but can stay on task and meet reasonable production requirements in an environment that allows him to maintain a flexible and goal-oriented place.  He is further limited to work that requires only occasional changes in the work setting which, when necessary, are introduced gradually.  The claimant can have occasional interaction with co-workers and the public, and work should require no more than occasional interaction with supervisors.

(Tr. 18).  The ALJ found that Plaintiff is unable to perform any past relevant work.  (Tr. 24).  Based on a hypothetical to the VE, which included those impairments the ALJ

found credible, the VE testified that a person with Plaintiff's background and RFC could perform medium, unskilled occupations such as machine feeder, hand packager, and general laborer, and could perform the sedentary jobs of hand assembler, machine, tender, and table worker. (Tr. 74-76). In light of this testimony, the ALJ found that, considering Plaintiff's age, education, work experience, and RFC, there are jobs existing in significant numbers in the national economy that he can perform. (Tr. 25). Accordingly, the ALJ found that Plaintiff was not disabled under the Social Security Act.

Plaintiff filed a timely request for review by the Appeals Council, which the Council denied on October 1, 2021. (Tr. 1). Plaintiff has thus exhausted all administrative remedies, and the ALJ's decision stands as the final agency action now under review. In his brief before this Court, Plaintiff argues that: (1) the ALJ failed to properly evaluate the medical opinion evidence for Plaintiff's ailments, and (2) the RFC is not supported by substantial evidence. Plaintiff asks that the ALJ's decision be reversed and that the case be remanded for an award of benefits or, alternatively, further evaluation.

## DISCUSSION

**Standard of Review and Statutory Framework**

In reviewing the denial of Social Security disability benefits, a court must review the entire administrative record to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *Johnson v. Astrue*, 628 F.3d 991, 992 (8th Cir. 2011). The court "may not reverse merely because substantial evidence would support a contrary outcome. Substantial evidence is that which a reasonable mind might

accept as adequate to support a conclusion." *Id*. (citations omitted). A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision. If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner." *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir. 2016) (citations omitted). Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice." *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted). A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id.*

To be entitled to benefits, a claimant must demonstrate an inability to engage in substantial gainful activity which exists in the national economy, by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The Commissioner has promulgated regulations, found at 20 C.F.R. § 404.1520, establishing a five-step sequential evaluation process to determine disability. The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If not, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments. A severe impairment is one which significantly limits a person's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c).

A special technique is used to determine the severity of mental disorders. As relevant here, this technique calls for rating the claimant's degree of limitations in four

5

areas of functioning, also known as the "paragraph B" criteria: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself.  20 C.F.R. § 404.1520a(c)(3).  To satisfy the "paragraph B" criteria, the claimant's mental impairments must result in one "extreme" or two "marked" limitation in functioning.  An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis.  A marked limitation is a seriously limited ability to function independently, appropriately, or effectively, and on a sustained basis.  20 C.F.R. § 404, Subpt. P, App. 1, 12.00(F)(2).

If the impairment or combination of impairments is severe and meets the duration requirement, the Commissioner determines at step three whether the claimant's impairment meets or is medically equal to one of the deemed-disabling impairments listed in the Commissioner's regulations.  If not, the Commissioner asks at step four whether the claimant has the RFC to perform his past relevant work.  If the claimant cannot perform his or her past relevant work, the burden of proof shifts at step five to the Commissioner to demonstrate that the claimant retains the RFC to perform work that is available in the national economy and that is consistent with the claimant's vocational factors – age, education, and work experience.  *See, e.g.*, *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010).  But even though the burden of production shifts to the Commissioner at step five, the burden of persuasion to prove disability remains on the claimant.  *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016).

**(1) Medical Opinion Evidence**

    **(a) Dr. Goldman's Opinion**

Plaintiff's treating psychiatrist, Dr. David Goldman, completed a Medical Source Statement ("MSS") on October 17, 2019, opining that Plaintiff had marked limitations in understanding, remembering, carrying out and making judgments on simple work-related instructions; extreme limitations in understanding and remembering complex instructions and in carrying out and making judgments on complex instructions and work-related decisions. He further opined that Plaintiff had marked limitations in interacting appropriately with the public, and extreme limitations in interacting appropriately with supervisors and co-workers and in responding appropriately to usual work situations and to changes in a routine work setting. (Tr. 1627-1630). Dr. Goldman issued a second MSS dated January 28, 2021, that was very similar, but with some slightly different findings. (Tr. 1622-1626).

Plaintiff asserts that the ALJ failed to properly consider medical evidence from Plaintiff's treating physician, Dr. Goldman, in favor of non-examining and non-treating state agency psychologist Dr. Akeson. (Doc. No. 14 at 12). Though the ALJ cited to Dr. Goldman's report broadly, Plaintiff argues she did not cite any specific pages which were inconsistent with the rest of the medical records. *Id*. at 14. She also declines to address that Dr. Goldman offered two consistent opinions, one from February 2019, and one from January 28, 2021. *Id*. According to Plaintiff, had the ALJ properly weighed Dr. Goldman's opinions, the ALJ would have found Plaintiff disabled. *Id*. at 12.

Claims filed after March 27, 2017, like Plaintiff's, require the ALJ to evaluate medical opinions pursuant to 20 C.F.R. § 404.1520c.  This provision states that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a).  Rather, an ALJ is to evaluate the persuasiveness of any opinion or prior administrative finding by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors.  20 C.F.R. § 404.1520c(c).

The rules make clear that supportability and consistency are the "most important factors"; therefore, an ALJ must explain how she considered these factors in the decision.  20 C.F.R. § 404.1520c(b)(2).  An ALJ may, but is not required to, explain how she considered the remaining factors. *Id.  See also, Brian O v. Comm'r of Soc. Sec.*, 2020 WL 3077009, at *4 (N.D.N.Y. June 10, 2020) (quoting 20 C.F.R. § 404.1520c(a), (b)) (stating that although "the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions'" (alterations omitted)). Though these rules require the ALJ to develop the record fully and fairly, an ALJ is not

8

required to discuss every piece of evidence submitted. *Wildman v. Astrue*, 956 F.3d 959, 966 (8th Cir. 2010) (citing *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). The failure to cite specific evidence does not indicate that the ALJ failed to consider such evidence, particularly when the ALJ mentions the overall findings throughout her opinion. *Id*.

      The ALJ noted that Dr. Goldman found Plaintiff had multiple marked and extreme limitations; nevertheless, she found Dr. Goldman's opinion unpersuasive. (Tr. 23). She first noted that the opinion lacked supportability, as it does not articulate an objective medical basis for the limitations. *Id*. Indeed, though Dr. Goldman agreed with Plaintiff's suggestion that his disability began on December 17, 2018, the only objective medical evidence he cites in support of his contention that Plaintiff suffers marked and extreme limitations is a Traumatic Brain Injury ("TBI") which occurred in 1997. (Tr. 1624). The ALJ further noted that Plaintiff engaged in substantial employment following the TBI. The ALJ thus found that Dr. Goldman's opinion lacks objective medical evidence to support his finding that Plaintiff has been disabled since 2018.

      The ALJ next notes that Dr. Goldman's opinion is inconsistent with both his own medical treatment records and the objective medical evidence of the record as a whole. (Tr. 23). The ALJ recites that Plaintiff reported to the emergency room during the period of disability for hearing voices, but that these symptoms and his complaints of depression and anxiety occurred primarily when he was dealing with other legal issues. *Id*. Other mental status examinations noted that Plaintiff's symptoms were consistently unremarkable, except for his insight and judgment, which were hampered by methamphetamine use, alcohol-related legal issues, and criminal charges. *Id*.

9

"Otherwise, by Plaintiff's own accounts, he was doing well." *Id.* Plaintiff himself also reported that he enjoyed social interactions and was fairly social, providing another point of contrast to Dr. Goldman's opinion. *Id*. Though the ALJ does not specifically note that Dr. Goldman's opinions were internally consistent between 2019 and 2021, she does explain why the opinions are neither supported by nor consistent with the record. *Id.*

Plaintiff argues that the ALJ did not fully consider the "waxing and waning" nature of his hearing voices, as indicated in Dr. Goldman's opinions. (Doc. No. 14 at 17-18). Likewise, he argues that the ALJ failed to explicitly consider Plaintiff's TBI, which is central to Dr. Goldman's opinion. *Id*. at 20. However, the law does not require that the ALJ explicitly cite each piece of evidence so long as the opinion indicates consideration of the evidence as a whole. *See Wildman,* 956 F.3d at 966. The ALJ notes that Plaintiff reports hearing voices, and that there is some evidence of depression. (Tr. 23). She also addresses Plaintiff's TBI in the context of his ability to work since 1997. (Tr. 15, 17). Overall, the ALJ thoroughly addressed why Dr. Goldman's opinion was inconsistent with the record as a whole, and therefore unpersuasive.

The ALJ found more persuasive the medical findings of the state agency psychologist Dr. Akeson, who determined based on a review of the records that Plaintiff had "no more than moderate mental limitations with the capacity to understand, remember, and carry out simple instructions and make simple work-related decisions, and adapt to most workplace changes with limited social interaction with others." (Tr. 23). She found this assessment to consistent with the record and supported by the mental status examination findings and the evidence as a whole. *Id.* As such, the ALJ

10

sufficiently considered the medical evidence and Dr. Goldman's opinions, and sufficiently explained her findings, and those findings are supported by sufficient evidence and within the zone of choice.

### (b) Credibility of Plaintiff's Testimony

In finding Dr. Goldman's opinion inconsistent with the remainder of the record, the ALJ noted that the opinion was inconsistent with Plaintiff's own testimony that he enjoyed social activities. (Tr. 23). Plaintiff argues that his own testimony should not be weighed against Dr. Goldman's opinion because Plaintiff's TBI renders his testimony unreliable. (Doc. No. 14 at 17). Plaintiff's TBI impairs his judgment and problem-solving, such that he cannot accurately assess his degree of sociability. *Id*. at 16.

Typically, an ALJ considers the credibility of a Plaintiff's testimony when determining the Plaintiff's Residual Functional Capacity ("RFC"). *See Ralph W. v. Kijakazi*, Case No. 4:20 CV 82 JMB, 2022 WL 3585616, at *5 (E.D. Mo. Aug. 22, 2022) (citing *Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir. 2007); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005)). In doing so, the ALJ must consider the claimant's prior work record and third-party observations as to the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Grindley v. Kijakazi*, 9 F.4th 622, 630 (8th Cir. 2021); *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). The ALJ is not mechanically obligated to discuss each of the above factors, and she must make an express credibility determination only when rejecting a Plaintiff's subjective complaints.

11

*Vick v. Saul*, No. 1:19 CV 232 CDP, 2021 WL 663105, at *8 (E.D. Mo. Feb. 19, 2021) (citing *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012)). On review by the court, credibility "determinations are the province of the ALJ." *Nash v. Comm'r, Soc. Sec. Admin.*, 907 F.3d 1086, 1090 (8th Cir. 2018) (quoting *Julin v. Colvin*, 826 F.3d 1082, 1086 (8th Cir. 2016)). The Court defers to the ALJ's determinations "as long as good reasons and substantial evidence support the ALJ's evaluation of credibility." *Id*.

In addressing and comparing Dr. Goldman's opinion and Dr. Akeson's opinion, the ALJ also describes how Plaintiff's judgment of his sociability is consistent with the remainder of the record. (Tr. 23). Specifically, the ALJ notes that Plaintiff was able to leave the house to perform work when not on house arrest, and that he remained pleasant, cooperative, and fully oriented during mental status examinations. *Id*. She also cites to Plaintiff's psychiatric records, in which physicians other than Dr. Goldman noted that Plaintiff engaged with his son in conversation, that he maintains strong friendships, that his brothers visited him, and that he cooperated respectfully with the prosecution as a witness to a murder case without hostility. *Id*.; *see also* (Tr. 680, 688, 700 and 711-712). Further, even when Plaintiff was on house arrest, he still entertained friends at his home. (Tr. 23). Though Plaintiff points to some contradictory evidence in the record, including Dr. Goldman's analysis that Plaintiff's TBI rendered him prone to anger and unsociability, the "fact that there [is] some medical evidence supporting [his] position concerning the severity of [his] symptoms does not mean that the ALJ's decision was not supported by substantial evidence." *Adamczyk v. Saul*, No. 19-1901, 817 F. App'x. 287, 290 (8th Cir. 2020). The records and medical evidence the ALJ reviewed and cites

12

indicate that the ALJ's determination that Plaintiff's testimony regarding his own sociability is reliable and is supported by substantial evidence.

### (c) Interpretation of Medical Evidence

Plaintiff argues that the ALJ impermissibly interpreted the medical evidence and "played psychiatrist" by discounting Dr. Goldman's opinion as unsupported by objective medical evidence. (Doc. No. 14 at 18-20, 23). Instead, Plaintiff contends that if the ALJ had fully weighed Dr. Goldman's opinion, she would have discounted the Vocational Expert's analysis that Plaintiff would not be too off task to sustain competitive employment. *Id*. at 23.

An ALJ may not "play doctor," that is, "draw improper inferences from the record or substitute a doctor's opinion for his own." *Adamczyk*, 817 F. App'x at 289 (citing *Pate-Fires v. Astrue*, 564 F.3d 935, 946-47 (8th Cir. 2009)) (further internal citations omitted). An ALJ draws improper inferences from the record when she relies on her own interpretation of the relevance of ambiguous treatment notes. *See Combs v. Berryhill*, 878 F.3d 642, 647 (8th Cir. 2017). *Cf. Cox v. Astrue*, 495 F.3d 614, 620 n. 6 (8th Cir. 2007) (explaining that medical records are sufficient so long as they describe the claimant's "functional limitations with sufficient generalized clarity to allow for an understanding of how those limitations function in a work environment"). However, an ALJ is permitted to draw "reasonable inferences" from the record. *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008). There is no requirement that an RFC finding "be supported by a specific medical opinion[,]" *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016), and the failure to cite to a particular medical opinion from which an RFC

13

came does not indicate that an ALJ "played doctor" with the plaintiff's medical evidence. *See Pierce v. Kijakazi*, No. 4:20 CV 1426 CDP, 2022 WL 888141, at *3 (E.D. Mo. Mar. 25, 2022) (internal citations omitted).

Plaintiff does not describe a specific impermissible inference the ALJ made regarding Dr. Goldman's opinion, other than that it was unsupported by objective medical evidence. Dr. Goldman found that Plaintiff had marked or extreme restrictions in each category of work-related activities listed on the medical source statement. (Tr. 1628-1629). When asked to identify the factors that support this assessment, including medical signs and laboratory findings, Dr. Goldman noted that Plaintiff's TBI disrupted his memory, focus, and concentration. (Tr. 1629). He also stated that Plaintiff's TBI resulted in a mood disorder, and that Plaintiff experiences depressive episodes and explosive anger outbursts. *Id*. Finally, Dr. Goldman reported that Plaintiff's anxiety disorder causes him to sleep all day, and Plaintiff is unable to recall what others tell him. *Id*. Despite suggesting that Plaintiff's mood disorder was the result of his TBI, Dr. Goldman states that Plaintiff's disability began on December 17, 2017. (Tr. 1630). Further, though Plaintiff's medical record demonstrating methamphetamine and alcohol use, Dr. Goldman found a question inquiring into substance use "not applicable." *Id*.

Although Dr. Goldman referred to Plaintiff's diagnoses, he did not refer to medical signs, laboratory findings, notes of treatment sessions, or other objective evidence to support his claim. To the contrary, the ALJ noted that the evidence available in the record contradicted many of Dr. Goldman's findings, including that Plaintiff's anxiety was related to discrete life events, and that Plaintiff used methamphetamines and

14

alcohol. (Tr. 23). Simply noting contrary evidence available in the record is not "playing doctor." *See Bradley*, 538 F.3d at 1115. The ALJ relied on medical opinion evidence and objective medical evidence available to her to weigh Dr. Goldman's opinion against those of other physicians. There is therefore no indication that the ALJ impermissibly "played doctor" by interpreting the medical evidence, and her determination that Dr. Goldman's opinion is unpersuasive remains sound.

### (2) Formulation of the RFC

A claimant's RFC is defined as "what [the claimant] can still do" despite her "physical or mental limitations." 20 C.F.R. § 404.1545(a). The ALJ must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of her limitations. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). Plaintiff argues that the ALJ improperly based Plaintiff's RFC on his ability to perform light chores and his conservative course of treatment. (Doc. No. 14 at 23-26).

### (a) Reliance on Plaintiff's Performance of "Light" Chores

Plaintiff asserts that the ALJ improperly based her RFC on Plaintiff's ability to perform light chores and housework. (Doc. No. 14 at 23). Though Plaintiff reported his ability to complete these tasks, he also reported that doing chores like weeding and yardwork hurt his body but keep his mind occupied. *Id*. at 25. Plaintiff contends that, when analyzed in the context of Plaintiff's decreased self-judgment after his TBI, this

15

indicates that Plaintiff is not able to perform the range of work outlined in the RFC. *Id*.

When determining whether a plaintiff has the residual functional capacity necessary to work the Court examines whether he has the "ability to perform the requisite physical acts day in and day out, in the sometimes competitive and stressful conditions in which real people work in the real world." *Bland v. Saul*, Case No. 2:18-CV-95 NAB, 2020 WL 1929786, at *7 (E.D. Mo. Apr. 21, 2020) (citing *Forehand v. Barnhart*, 364 F.3d 984, 988 (8th Cir. 2004)) (further internal citations omitted). On its own, evidence that a person is able to engage in personal activities, such as cooking, cleaning, and hobbies, does not constitute substantial evidence of that person's functional capacity to engage in gainful activity. *Id*. (citing *Kelley v. Callahan*, 133 F.3d 583, 588-589 (8th Cir. 1998)). However, when considered in the context of a conservative course of treatment or medical reports which indicate mild or moderate symptoms, evidence of personal activities can support finding that the plaintiff can engage in some work. *See Broomfield v. Saul*, No. 4:18 CV 1267, 2019 WL 3777629, at *3 (E.D. Mo. Aug. 12, 2019). *See also Fox v. Saul*, No. 1:18CV248 RLW, 2020 WL 1445715, at *7 (E.D. Mo. Mar. 25, 2020) (citing *Julin v. Colvin*, 826 F.3d 1082, 1087 (8th Cir. 2016); *Ponder v. Colvin*, 770 F.3d 1190, 1195-96 (8th Cir. 2014)). A plaintiff's ability to complete personal activities is of particular importance when inconsistencies between subjective complaints and daily living patterns "cast doubt on [the plaintiff's] disability claim." *Id*.

The ALJ noted that Plaintiff testified as to his migraine headaches, high blood pressure, diabetes, knee pain, anger, disturbed sleep, panic attacks, auditory hallucinations, and some social isolation. (Tr. 19). He also testified that his daily

16

activities were limited, but that they included laundry, vacuuming, and other chores. *Id*. Furthermore, Plaintiff reported that he was managing his symptoms with medication, and that his mental status examinations were largely normal, except for his insight and judgment. (Tr. 20). The ALJ reiterates that Plaintiff's described daily activities are "somewhat inconsistent" with "the severity of symptoms and the degree of limitation alleged[,]" indicating that she used Plaintiff's reports of daily chores to evaluate the reliability of his testimony regarding his physical and mental limitations. (Tr. 21). She also supported this analysis by considering whether the activities Plaintiff states he engaged in were consistent with his mental status examinations. (Tr. 23). This consideration of Plaintiff's daily activities is a permissible means of evaluating his testimony regarding his symptoms, particularly as it is supported by other medical evidence in Plaintiff's record.

    **(b) Reliance on Plaintiff's Conservative Treatment**

A conservative course of treatment constitutes substantial evidence supporting a less limiting RFC. *See Buford v. Colvin*, 824 F.3d 793, 796-797 (8th Cir. 2016). When a plaintiff's pain or limitations are managed with medication and do not require surgical intervention, a less limiting RFC is appropriate. *Id*. (citing *Wildman*, 596 F.3d at 965). Treatment which is occasionally more invasive or less conservative may still be considered a "conservative course of treatment" when the evidence shows a lack of consistent complaints, objective symptoms, and ongoing treatment of the same severity. *Id*. (citing *Cox*, 160 F.3d at 1207). A conservative course of treatment may constitute the "most persuasive medical reason" an ALJ offers in support of her findings as to the

17

plaintiff's RFC.  *Pierce v. Kijakazi*, 22 F.4th 768, 773 (8th Cir. 2022).

Plaintiff does not contend that an ALJ may not rely on evidence of conservative treatment when formulating an RFC.  Rather, he argues that the ALJ mischaracterized his treatment as conservative when he actually required significant medical intervention to manage his symptoms.  (Doc. No. 14 at 24).  Specifically, Plaintiff notes that he required surgeries in 1997 after the accident that caused his TBI.  *Id*. at 23.  Though he did not undergo surgeries again since the onset of his disability, the record does indicate that Plaintiff reported pain and tenderness, as well as TBI symptoms, which exacerbated his mental health symptoms, in 2019.  *Id*. at 24.  Plaintiff also points out that he experienced migraines, which physicians attempted to control with a variety of medications, including injections.  *Id*. at 24-25.  However, he continued to report consistent migraines despite the medications.  *Id*. at 25.

The ALJ notes that Plaintiff's mental symptoms were fairly mild, and that Plaintiff's mental status examinations were consistently normal, with a few instances of exacerbation.  (Tr. 20).  Though Plaintiff checked himself into the emergency room for hallucinations in 2019, he did not appear to be at risk and was discharged shortly after. *Id*.  The ALJ also explains that although Plaintiff reported hearing voices after being prescribed an initial medication in March 2020, when his medication was changed, Plaintiff consistently reported "doing okay with medication" and feeling well "mentally and physically." (Tr. 20-21).  This analysis is consistent with the record, in which Plaintiff consistently tells his treating psychologists that his mental health symptoms are improving, with only a few areas of exacerbation. *See* Tr. 680, 688, 700.  As Plaintiff

18

consistently noted that his medication assisted with his mental health symptoms, and less consistently noted that he required additional assistance, the ALJ properly considered his mental health treatment conservative.

The ALJ also noted that Plaintiff reported his migraines had improved in December 2018, and "dramatically" improved in January 2019. (Tr. 22). Though he reported that medication controlled his migraines, he also stated that he began experiencing them again in May 2019. *Id*. The ALJ explained that a CT scan of Plaintiff's brain was normal in September 2019, and that as of August 2020, the migraines were stable. (Tr. 21). However, she also noted that in January 2021, Plaintiff's physicians found that his migraines were improving again. *Id*. This record demonstrates consistent management of Plaintiff's migraines, with only a brief period of non-improvement, supporting the ALJ's characterization of Plaintiff's treatment as "conservative."

Similarly, the ALJ pointed out that Plaintiff's physical impairments were treated with prescribed medication with no evidence of adverse side effects. (Tr. 21). Plaintiff does not require the use of assistive devices and has not required surgery or physical therapy since the onset of his disability. *Id*. This characterization is consistent with Plaintiff's own description of his treatment as prescribed injections. *See* (Doc. No. 14 at 24-25). Courts in the Eighth Circuit have routinely held that prescribed medication alone constitutes a conservative course of treatment. *See, e.g., Pierce*, 22 F.4th at 773 (noting that treatment of "primarily narcotic pain medication" without surgery or physical therapy constituted a conservative course of treatment); *Walker v. Colvin,* 124 F. Supp.

19

3d 918, 935 (E.D. Mo. 2015) (holding that a regimen of prescription medication and physical therapy was conservative treatment); *Frese v. Kijakazi*, Case No. 4:21-CV-103-JAR, 2022 WL 424902, at *5 (E.D. Mo. Feb. 11, 2022) (finding that prescribed medication and physical therapy alone were a conservative course of treatment). As Plaintiff's treatment for his physical ailments consisted of only prescribed medications, the ALJ properly characterized the treatment as conservative.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**. A separate Judgment shall accompany this Memorandum and Order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated on this 23rd day of March, 2022.